1

2

3                    UNITED STATES DISTRICT COURT

4                   CENTRAL DISTRICT OF CALIFORNIA

5

6   UNITED STATES OF AMERICA,        )
                                      )  No.  5:14-CR-065-JLQ
7                      Plaintiff,     )
                                      )
8          vs.                        )  MEMORANDUM OPINION
                                      )  AND ORDER RE: SENTENCING
9                                     )  AND RESTITUTION
    GUILLERMO MONGE,                  )
10                                    )
                       Defendant.     )
11  _____  )

12         Defendant appeared at the time set for sentencing on February 19, 2015, and was

13  represented by Assistant Federal Defender Jeffrey Aaron.  Special Assistant United States

14  Attorney Stephen Merrill participated on behalf of the Government.   This Order

15  memorializes and supplements the court's oral rulings.

16         **I.  Background and Procedural History**

17         Defendant, Guillermo Monge (herein "Defendant" or "Monge"), was indicted on

18  June 18, 2014, on the charges of receipt of child pornography (Count I) and possession

19  of child pornography (Count II) in violation of 18 U.S.C. § 2252A(a)(2) and (a)(5)(B).

20  The Indictment charged that Defendant received child pornography between October 17,

21  2013, and April 4, 2014.  The Indictment further charged that Monge possessed  child

22  pornography on April 23, 2014.

23         On August 15, 2014, Defendant entered a plea of guilty to Count I of the Indictment

24  pursuant to a Plea Agreement.  He was then represented by his retained attorneys Albert

25  Kim and Eugene Carson III.  The court accepted the plea of guilty and set the matter for

26  sentencing on October 29, 2014. The court entered its Sentencing Scheduling Order (ECF

27  No. 23) On August 18, 2014, which, *inter alia,* required the Government to file any

28  ORDER - 1

restitution claims on or before September 22, 2014. In the Plea Agreement, Defendant agreed to numerous sentencing enhancements totaling a 17-level offense level increase. Applying these enhancements, the PSR, filed on September 22, 2014,calculated a Guideline Range of 188 to 235 months and reported that the Defendant had no prior criminal history.

On September 22, 2014, the Government filed its "Initial Position Regarding Restitution" stating that it had not yet received a request for restitution from a victim. (ECF No. 27). On October 15, 2014, the Government filed its Sentencing Memo which recommended a sentence of 235-months. (ECF No. 29). On or about October 22, 2014, the Government manually filed its "Second Position Regarding Restitution" wherein the Government sought a total of $19,000 in restitution for victims "Angela" ($12,000) and "Cindy" ($7,000). These victims only connection to the Defendant was that the Defendant had allegedly received child pornography in which the victims were shown. The Defendant had no direct connection to the victims, had not participated in the production of the pornography, and as found in the PSR, there was no evidence that the Defendant had directly distributed the child pornography.

Despite the fact that the Government was recommending a high-end Guideline sentence of nearly 20 years for the Defendant and was then seeking restitution, the retained defense counsel did nothing. Defense counsel filed no sentencing memorandum, filed no response or objections to the PSR, and did not oppose restitution. This led the court to issue an Order on the date prior to sentencing to address the "complete inactivity and silence" of defense counsel which raised concerns as to ineffective assistance of counsel. (ECF No. 24).

The court's concerns were justified, because at the October 29, 2014 hearing, the time set for sentencing, the court discovered that Attorney Albert Kim was handling his first case in federal court, was not admitted to practice in the Central District of California, and claimed that electronic notice from the court of filings was going to his

ORDER - 2

"junk mail". Eugene Carson III, Defendant's co-counsel, did not appear at the time set for sentencing. <u>See</u> Order of October 31, 2014 for further detail (ECF No. 39). Ultimately, Assistant Federal Defender Jeffrey Aaron was appointed to replace the originally retained counsel, the sentencing was continued, and Mr. Aaron filed a Sentencing Memo (ECF No. 62) which argued for a mandatory minimum sentence of five years, a five year term of supervised release, and opposed the amount of restitution sought for "Cindy" and "Angela". After that filing by Defendant, on February 3, 2015, the Government filed its "Third Position Regarding Restitution" which sought additional restitution for John Does I-V. The amount sought for each of the John Does varied from $13,797 to $17,523, and totaled approximately $75,000.

## II. Guidelines Calculation and Mandatory Minimum

Neither party filed objections to the Guidelines calculation in the PSR. The PSR calculated an Offense Level of 36 and criminal history Category I for a Guideline Range of 188-235 months. The court found the Guideline Range to be 188 to 235 months.

If a defendant does not have a prior qualifying offense, a conviction for "possession" of child pornography does not require a mandatory minimum sentence. A conviction for "receipt" of child pornography, carries a 5-year mandatory minimum prison sentence. Monge has no prior offenses. The Government charged him with both "receipt" and "possession." Monge entered a plea of guilty to the "receipt" charge. The statutory mandatory minimum five year sentence applies.

## III. The Guidelines Applicable to Child Pornography Offenses

Many courts have recognized that the Guidelines can be unduly severe when it comes to punishment of the offenses of possession and receipt of child pornography. <u>See</u> United States Sentencing Commission's Report to Congress: Federal Child Pornography Offenses (December 2012)[1](Executive Summary, p. ii)("...sentencing data indicate that

---

[1]Available at www.ussc.gov and cited herein as USSC 2012 Report.

ORDER - 3

a growing number of courts believe that the current sentencing scheme in non-production offenses is overly severe for some offenders.").  The undue severity of the Guidelines, particularly in cases of receipt or possession, have resulted in numerous below-Guideline sentences, as demonstrated by statistical data.    The United States Sentencing Commission's preliminary cumulative data for the period of October 1, 2013 to September 30, 2014, reflects that only 31.2% of all child pornography sentences nationwide are within the Guidelines.  Less than 3% of the sentences are above the Guidelines, and the remaining approximately 2/3's of all child pornography sentences nationwide were below the Guidelines during that 2013-2014 time period[2].

It is well established that the court may vary from the Guidelines based on policy disagreements with them, and not simply based on an individualized determination that they yield an excessive sentence in a particular case. See *United States v. Henderson*, 649 F.3d 955, 963 (9th Cir. 2011) citing *Kimbrough v. United States*, 552 U.S. 85 (2007).  In *Henderson*, the Ninth Circuit Court of Appeals found that "the child pornography Guidelines are, to a large extent, not the result of the Commission's exercise of its characteristic institutional role, which requires that it base its determinations on empirical data and national experience, but of frequent mandatory minimum legislation and specific congressional directives to the Commission to amend the Guidelines." *Id.* at 962-63. Therefore, the Circuit held that "district courts may vary from the child pornography Guidelines, § 2G2.2, based on policy disagreement with them". *Id*.  In so concluding, the Ninth Circuit joined several other Circuits.  See *United States v. Dorvee*, 616 F.3d 174 (2nd Cir. 2010); *United States v. Grober*, 624 F.3d 592 (3rd Cir. 2010); and *United States v. Stone*, 575 F.3d 83 (1st Cir. 2009).

The role of the court in this case, as in others, is to determine and impose a sentence that is sufficient, but not greater than necessary, to comply with the dictates of

---

[2]Statistical data available at www.ussc.gov

ORDER - 4

18 U.S.C. § 3553(a). The court finds that in this case, a variance from the calculated Guidelines Range is appropriate pursuant to *Kimbrough* and *Henderson* and 18 U.S.C. § 3553(a).

### IV.  The Government's Arguments

The Government's written sentencing brief (ECF No. 29) seeks a sentence of 235-months.  This recommendation was based on the Government's contention that Defendant's collection was one of the largest agents had seen and that more than 30 years prior, Defendant had allegedly engaged in unreported, and uncharged conduct with a minor.  The court found that such alleged conduct over 30 years ago, without any allegation of being repeated, should not be considered by the court in making its sentencing decisions.  At sentencing, the Government argued three factors, which appear to from the  USSC 2012 Report: 1) the content of the Defendant's child pornography collection and the nature of the Defendant's collecting behavior; 2) the degree of the Defendant's involvement with other offenders, such as in an internet community; and 3) whether the Defendant has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense. (Ex. Summ. p. xvii).

### V.  Defendant's Arguments

Defendant argues for a 60-month sentence followed by a five-year term of supervised release. (ECF No. 62).  Defendant argues that the Guidelines are not based on empirical data, and cited to the USSC 2012 Report. (ECF No. 62, p. 5).  Defendant also contends that the court should consider Defendant's age, health, and childhood circumstances.  Specifically, Defendant argues that his poor physical health makes him highly vulnerable in a prison setting, and that his anxiety, depression, and obsessive compulsive/hoarding disorder contributed to the offense conduct.  Defendant also contends that the Government has not met its burden of proving restitution, and that the

ORDER - 5

court should award only $1,500.00 each to Angela and Cindy.[3]

## VI. Discussion

The Government's argument for a lengthy sentence based on the size of Defendant's collection of images is not convincing. The PSR states that Defendant had approximately 150,000 images and 3,000 videos, and those were found based on an incomplete review of all the data on Monge's computers. In this court's experience, most child pornography cases, which nearly now all involve computers, typically involve thousands of images. The USSC 2012 Report states: "Typical offenders maintain collections of still and video images numbering in the hundreds or thousands." (Ex.Summ. p. vii). Although Monge's collection may be larger than average, it may not be. By way of example, this court has handled a case in the last year in which a defendant had over 1.9 million images and over 8,000 videos–although not all were analyzed by the agents.

As to the Government's second argument concerning whether Defendant was involved in an on-line community of other offenders, no evidence was presented other than that Monge used peer-to-peer software. The USSC 2012 Report states: "the typical offender today uses modern Internet-based technologies such as peer-to-peer ("P2P") file sharing programs that were just emerging only a decade ago and that now facilitate large collections of child pornography." (Ex.Summ. p. ii). The Government stated at sentencing that it had no evidence, such as e-mail communications, showing that Monge communicated with other offenders or sent images to other offenders. The PSR states that although Monge accepted responsibility for possession and receipt, "he was unaware that others could access the images from his computer and he was unaware that the images were transported through foreign commerce." (ECF No. 68, ¶ 20).

---

[3]Defendant's brief was filed prior to the filing of the Government's Third Position on Restitution which sought additional restitution for John Does I to V.

ORDER - 6

The Government did not charge Monge with distribution, and the court does not find any evidence of intentional distribution for pecuniary gain.  Other than placing images on the P2P network, the Probation Office wrote: "There is no evidence that Monge otherwise affirmatively distributed or paid for or received monies for the distribution of child pornography." (PSR ¶ 12).  The court does recognize that Defendant stipulated to a 2-level enhancement in the Plea Agreement for distribution. "Distribution" under the Guidelines includes "posting material involving the sexual exploitation of a minor on a website for public viewing". USSG 2G2.2, App. Note 1; see also *United States v. Vallejos*, 742 F.3d 902 (9th Cir. 2014).

As to the Government's third point, concerning whether the Defendant has a history of engaging in sexually abusive, exploitative, or predatory conduct with minors, Defendant has no history of any convictions, arrests, or charges for such behavior.  For this argument, the Government relies on a portion of the PSR entitled, "Offense Behavior Not Part of Relevant Conduct".  This section of the PSR describes that a nephew, now approximately 45 years old, claims that he was molested by Monge on two occasions when he was 9 or 10 years old.  This alleged conduct was never previously reported to law enforcement. This court will not base its sentencing decision on unreported, uncharged, conduct that allegedly occurred over 30 years ago.  Much more significant than an untimely, unsubstantiated allegation, is that Monge has no criminal history.  The court has no valid, credible evidence before it that Monge has acted inappropriately with minors.  Possession and receipt of child pornography are illegal and constitute societal harms, but "social science research has not established that viewing child pornography causes the typical offender to progress to other sex offending against minors." USSC 2012 Report (Exec. Summ. p. vii).  The court cannot assume that Monge is dangerous because he possessed child pornography, degrading and disgusting as that is.    Further evidencing a lack of dangerousness, Monge has been at liberty since the time of his arrest in June 2014, and has been in compliance with his conditions of release.

ORDER - 7

1    The court has considered the Government's three principal arguments at

2  sentencing.  Possession of thousands of images by offenders who use computers is not

3  atypical.  Use of P2P software is not atypical.  There is no valid evidence that Monge has

4  a history of sexually abusive conduct, and he has no criminal history.  The court has

5  considered the Defendant's arguments in mitigation, and will discuss them further *infra*

6  in the context of the Section 3553(a) factors.

7    **VII.  3553(a) Factors**

8    The court has considered all the 3553(a) factors in determining a prison sentence

9  that is sufficient, but not greater than necessary as punishment and    The court has

10  weighed the nature and circumstances of this offense.  The relevant conduct involved the

11  possession of a large amount of child pornography.   The court has given careful

12  consideration to Defendant's complete lack of criminal history.  The court has considered

13  Defendant's productive employment for over 20 years.  The court has considered that

14  Defendant provided help and care for his parents during their poor health and declining

15  years. (PSR ¶ 63).  The court has also considered Monge's age and poor health, which

16  includes obesity, back pain, high blood pressure, and mental health issues.  Defendant,

17  prior to his arrest, sought treatment for depression and anxiety. (PSR ¶ 71).  After his

18  arrest, Defendant sought additional treatment for depression, anxiety, and hoarding.

19
20    The court has considered the need for the sentence to reflect the seriousness of the

21  offense and provide just punishment.  The court has considered the need to afford

22  adequate deterrence and the need to protect the public.  The court has concerns over the

23  lack of data or evidencing or establishing that lengthy sentences in these cases actually

24  deter other would be possessors of child pornography.  As Judge Reinhardt has recently

25  stated, "those who only view child pornography, including those who exchange video

26  computer files, are in all likelihood the victims of a form of mental illness that prevents

27  them from controlling what they would otherwise understand to be not only unhealthy

28  ORDER - 8

impulses but impulses that result in great harm to the most innocent members of our society." *United States v. Hardrick*, 766 F.3d 1051, 1058 (9th Cir. Sept. 4, 2014)(concurring). If that suggestion is correct, one can hardly expect lengthy sentences to others to deter such individuals, as much as that may be desired. As for the need to protect the public, the Defendant has no prior criminal history to indicate that he is a danger to the public. Defendant has been at liberty since the time of his arrest in June 2014, and the court has not been informed of any violations of his conditions of release.

This court also shares other judges' concerns for the seemingly excessive mandatory sentences which apply to those who merely view (possess or receive) child pornography on their computers. Monge did not produce or distribute pornography for financial gain. As for those contemptible persons who actually "produce or distribute child pornography for financial gain, such individuals willfully do serious injury to the most vulnerable members of our society and deserve whatever punishment the law provides." *Id.* at 1058. However, for individuals such as Monge, "sentences of five to twenty years for a first offense of viewing child pornography are not the solution. Nor are mandatory sentences of fifteen to forty years for a second." *Id.* (Reinhardt, J., concurring).

Here, Monge was offered a plea to the receipt count, which carries the five-year mandatory minimum sentence. The USSC 2012 Report, expressed concern regarding sentencing disparity, and explained how charging decisions affect such disparity:

> The Commission's study of a large sample of similarly situated §2G2.2 offenders with no criminal history who were sentenced in fiscal year 2010 revealed substantial sentencing disparities resulting from how they were charged and sentenced under the guidelines. On average, offenders convicted of possession but who knowingly received child pornography were sentenced to a term of 52 months of imprisonment, while on average similarly situated offenders convicted of receipt were sentenced to a term of 81 months of imprisonment. (Ex. Summ. p. xiii).

As the Commission recognized, there is no material difference between "receipt"

ORDER - 9

and "possession": "The Commission's review of over 2,000 non-production cases has demonstrated that the underlying offense conduct in the typical case in which an offender was prosecuted for possession was indistinguishable from the offense conduct in the typical case in which an offender was prosecuted for receipt." (*Id*. at xx).

Monge has pled guilty to receipt. Congress has set a mandatory minimum 5-year sentence for receipt of child pornography. That is the mandatory minimum that applies in this case. The Guidelines range is 188-235 months. It is the judgment of this court that a five year sentence, followed by a fifteen year term of supervised release with strict conditions, is the sentence which is sufficient, but not greater than necessary, to comply with 18 U.S.C. § 3553(a).

## VIII. Restitution

The statutory scheme concerning restitution for victims of child pornography is summarized by the United States Supreme Court as follows:

> Section 2259 states a broad restitutionary purpose: It requires district courts to order defendants "to pay the victim ... the full amount of the victim's losses as determined by the court," § 2259(b)(1), and expressly states that "the issuance of restitution under this section is mandatory," § 2259(b)(4)(A). Section 2259(b)(2) provides that "an order of restitution under this section shall be issued and enforced in accordance with section 3664," which in turn provides in relevant part that "the burden of demonstrating the amount of the loss sustained by the victim as a result of the offense shall be on the attorney for the Government," § 3664(e).

*Paroline v. United States*, 134 S.Ct. 1710, 1718-19 (2014). In *Paroline*, the Court determined that Section 2259 employs a proximate cause standard: "Restitution is therefore proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses." *Id*. at 1722.

The Supreme Court recognized the difficulty in quantifying the harm caused to the victim by a defendant who possesses an image of the abuse of the victim: "While it is not

ORDER - 10

possible to identify a discrete, readily definable incremental loss he caused, it is indisputable that he was part of the overall phenomenon that caused her general losses." *Id.* at 1726. Therefore, the Court instructed district courts to "order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id*. at 1727. The Court stated the amount should not be "severe" but should not be "token or nominal", in a case such as the one before it, where the defendant had two images of Amy and there were likely thousands of other offenders. *Id*. The *Paroline* Court further recognized that the process "cannot be a precise mathematical inquiry" and provided a "variety of factors that the district courts might consider in determining a proper amount of restitution." *Id.* at 1728. Ultimately, the *Paroline* majority recognized that its test was inexact and required discretion. *Id.* at 1729 ("the approach articulated above involves discretion and estimation.").

The Government has provided evidence of the losses to Angela, Cindy, and John Does I-V. As to the John Does, the Government has provided information concerning 66 other convictions, and restitution awards in those cases, which range from $100 to over $30,000. (ECF No. 67). As to Angela, the court stated 29 other defendants had been convicted and ordered to pay restitution, and concerning Cindy, 206 defendants have previously been convicted and ordered to pay restitution. (ECF No. 47). The Government offered these figures as a mathematical starting point for an award. Although the Government's briefing sought varying amounts for the seven victims, ranging from $7,000 to $17,000, at sentencing the Government stated that it would be appropriate to award an equal amount to each of the seven.

The court has determined, considering the "twin goals" of *Paroline* to help the victims achieve eventual restitution for their losses and to impress upon offenders the fact that child-pornography crimes affect real victims, that an award of $3,000.00 to each of the victims, for a total award of $21,000.00 is appropriate.

ORDER - 11

**IT IS HEREBY ORDERED:**

    1.  Pursuant to the Government's oral Motion at the conclusion of sentencing, Count II of the Indictment is hereby dismissed.

    2.  Judgment shall be entered in accord with this Opinion imposing a sentence of 60 months, to be followed by a fifteen year term of Supervised Release, and including an award of restitution totaling $21,000.

    **IT IS SO ORDERED**.  The Clerk shall file this Order and deliver copies to counsel.

    **DATED** this 25th day of February, 2015.

s/ Justin L. Quackenbush<br>
JUSTIN L. QUACKENBUSH<br>
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 12